**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

_____

In re:   Vision Adventures, LLC,                                    BK No: 13-10660
        Debtor                                                          Chapter 7

_____

Joseph M. DiOrio, Chapter 7 Trustee
of Vision Adventures, LLC,
      Plaintiff

      v.                                                              A.P. No. 15-01006

Linda K. Davis Griffin
and Shirley Davis,
      Defendants

_____

**DECISION AND ORDER ON DEFENDANTS' MOTION TO VACATE DEFAULT
AND PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**
(this relates to Doc. ## 9, 10, 15, 16, 17, 18, 21)

Plaintiff Joseph M. DiOrio, the Chapter 7 trustee ("Trustee"), seeks entry of a default judgment against Defendants Linda K. Davis Griffin ("Ms. Griffin") and Shirley Davis ("Ms. Davis") (collectively the "Defendants") after entry of default against them (Doc. #12)[1] for failure to file an answer, or other responsive pleading to the complaint commencing this adversary proceeding ("Complaint"). Essentially, the Defendants seek to vacate the default and object to the entry of a default judgment against them, justifying their failure to respond to the Complaint by relying on a blanket assertion of their Fifth Amendment privilege against self-incrimination because of a criminal case they allege is pending before the "United States District Court" relating to transactions similar to those alleged in the Complaint.[2]

---

[1] All references to the docket shall be to the Court's official docket in this adversary proceeding.

[2] *See* Defendants' motions to extend time to respond to the Plaintiff's motion for default judgment (Doc. ## 22, 25, 28). For a more detailed explanation of these motions, see *infra* footnote 9. The Defendants provide no details of this alleged pending criminal case, and a search of the databases in PACER does not reveal any criminal proceeding pending against either of the Defendants before any of the United States District Courts in the First Circuit.

This Decision and Order constitutes my findings of fact and conclusions of law. After careful review of the record and the various related filings by the parties, I conclude that the Defendants have shown just cause to warrant vacating the default entered against them, although their reliance on a blanket invocation of the privilege to avoid responding to the Complaint is misplaced. In light of their *pro se* status and what I believe is their sincere but mistaken belief that merely citing to this privilege would relieve them of the requirement to file a formal answer to the Complaint, I will afford the Defendants one last chance to properly do so consistent with the discussion below.

**I.    Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) [3] and 1334, and DRI LR Gen 109(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

**II.    Procedural History**

On March 3, 2015, the Trustee filed the Complaint asserting two state law claims, alleging that the Defendants (1) fraudulently transferred to themselves assets of the corporate debtor Vision Adventures, LLC[4] ("Debtor") in violation of the Rhode Island Uniform Fraudulent Transfer Act, specifically referencing Rhode Island General Laws §§ 6-16-4(a)(1), (a)(2), and 6-16-5(a), as well as relying upon the so-called "strong-arm avoidance" provisions of Bankruptcy Code §§ 544 and 550; and (2) breached their fiduciary duties owed to the Debtor arising under Rhode Island law. He seeks judgment against the Defendants jointly and severally in an aggregate amount of not less than $600,000. The Trustee properly served the summons and

---

[3] Unless otherwise indicated, the terms "Bankruptcy Code," "Code," "Chapter," "Section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("BAPCPA").

[4] Vision Adventures, LLC filed a voluntary petition under Chapter 11 on March 17, 2013, which it converted to Chapter 7 on January 13, 2014. BK. No. 13-10660. Thereafter, Mr. Diorio was appointed Chapter 7 trustee of the Debtor.

Complaint upon the Defendants and they failed to file an answer or other responsive pleading as permitted by Rule 7012(b) of the Federal Bankruptcy Rules of Procedure,[5] (hereinafter for convenience referred to as the "Answer"). The Trustee requested entry of a default against the Defendants and also filed a Motion for Entry of Default Judgment ("Motion for Default Judgment") (Doc. ## 8, 9). The Clerk entered a default on June 22, 2015. Seven days later, the Defendants filed an objection to the Entry of Default (Doc. #15), which I treated as a motion to vacate the entry of default ("Motion to Vacate Default").[6] As grounds for their objection and failure to Answer the Complaint, the Defendants asserted "the right guaranteed us under the United States Constitution to remain silent" because "the Defendants were subject to a federal criminal investigation centered upon the same fact pattern" addressed in the Complaint. Motion to Vacate Default, at ¶ 1. They asked the Court to (1) deny the Motion for Default Judgment or (2) to stay the adversary proceeding pending the outcome of the alleged on-going federal criminal proceeding, and then upon denial or completion of the criminal proceeding to grant them more time to respond to the "original [m]otion."[7] The Motion to Vacate Default bore the signature of only Ms. Griffin although it was purportedly filed also on Ms. Davis' behalf. Initially, I entered an Order deeming the Motion to Vacate Default as being filed only by Ms. Griffin and not Ms. Davis who had not signed the motion, because Ms. Griffin is not an attorney and cannot purport to file it also on Ms. Davis' behalf. I gave Ms. Davis the opportunity to file her own separate motion to set aside the default, but she has not done so.

---

[5] Rule 7012 of the Federal Rules of Bankruptcy Procedure incorporates Rule 12(b)-(i) of the Federal Rules of Civil Procedure. Further, references to the "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure.

[6] On July 21, 2015, I entered an order treating the objection as a motion to set aside the entry of default (Doc. #17).

[7] It is unclear what the "original [m]otion" is referring to, but based on the context it presumably means the Complaint.

The Trustee filed a response (the "Response") to the Motion to Vacate Default on July 6, 2015, challenging it as improper, untimely filed, and little more than a continued abusive stall tactic engaged in by the Defendants in the main bankruptcy case (Doc. #16).[8]

In fairness to the Trustee, I afforded him the opportunity to file a supplemental memorandum in response to the Motion to Vacate Default and also to address the issue of the Court's constitutional authority to enter a final judgment of default against the Defendants in light of the United States Supreme Court's ruling in *Stern v. Marshall*, 131 S. Ct. 2594 (2011). *See also Wellness Int'l Network Ltd. v. Shariff*, 135 S. Ct. 1932 (2015). The Trustee filed his supplemental memorandum ("Supplemental Memo") (Doc. #21), and the Defendants were initially given until September 8, 2015, by which to file a response.

Instead of filing their response, the Defendants filed three consecutive motions to extend the time for their response (Doc. ## 22, 25, 28) (collectively, the "Extension Motions"), reiterating in each extension request that they required more time because of the alleged pending criminal proceeding and the jeopardy to their Fifth Amendment privilege against self-incrimination if required to respond. Both Ms. Griffin and Ms. Davis signed all of these motions. After granting two extensions to October 22, 2015, I denied their third request and directed that if they wished to file a response, then they would have to do so by October 30, 2015 (Doc. #29).[9]

---

[8] The Complaint alleges that Ms. Griffin and Ms. Davis failed to provide books and records of the Debtor to the Trustee despite his repeated demands and ignored the Court's order to compel turnover of such documents. *See* Complaint, ¶14-19, 28-35. I note that the Trustee has not taken any follow-up action in the main case to pursue turnover of the Debtor's records.

[9] The Defendants' first motion to extend time to respond ("First Motion to Extend") (Doc. #22) requested an additional month, until October 8, 2015, in order to find legal representation and to resolve the criminal matter, which I granted.. On October 8, 2015, the Defendants filed their second motion to extend time to respond ("Second Motion to Extend") until November 20, 2015 (Doc. #25), reiterating the same reasons stated in their First Motion to Extend. I granted the Second Motion to Extend but only until October 22, 2015, and advised that no further extensions would be granted. On October 22, 2015, the Defendants filed a third motion to extend time ("Third Motion to Extend") (Doc. #28) until November 30, 2015, which I denied.

Just to complete this somewhat convoluted procedural history, the Defendants appealed my denial of their Third Motion to Extend to the United States Bankruptcy Appellate Panel for the First Circuit ("BAP"). The BAP determined that the appeal was interlocutory and did not warrant discretionary review. It issued its mandate on December 18, 2015, returning the matter to this Court. That brings us full circle now for me to rule on the Motion to Vacate Default and the Trustee's Motion for Default Judgment, which I took under advisement on that date.

### III. Trustee's Opposition

Applying three principal factors to determine if good cause exists for vacating the entry of default, the Trustee first contends that the Defendants' assertion of the Fifth Amendment privilege does not bar or excuse them from filing an Answer to the Complaint, and thus their failure to do so was willful "as opposed to merely negligent."[10] Supplemental Memo, ¶ 16. Second, the Trustee maintains that he will be prejudiced by further delay if the default is vacated because there is nothing to prevent the Defendants from depleting the assets he alleges were fraudulently transferred from the Debtor. Third, he posits that the Defendants lack a meritorious defense because they did not articulate any facts that would constitute such a defense in the Motion to Vacate Default or during a deposition he conducted of Ms. Griffin under Bankruptcy Rule 2004. He further raises the fact that this Court has already entered a default judgment against Ms. Griffin in another adversary proceeding in the bankruptcy case he brought to recover over $41,000 in unauthorized post-petition transfers Ms. Griffin made to herself from the Debtor's funds. *See* Bk. No. 14-ap-01012.

---

[10] Actually, in light of my earlier order deeming the Motion to Vacate Default as having been filed only as to Ms. Griffin, the Trustee addresses his arguments against Ms. Griffin. For reasons explained *infra*, I will deem the Motion to Vacate Default as applicable to both Defendants.

**IV.     Applicable Law**

      A.     <u>Vacating Entry of Default</u>

Rule 55(c) of the Federal Rules of Civil Procedure, applicable to bankruptcy proceedings pursuant to Bankruptcy Rule 7055, grants the court discretion to set aside an entry of default "[f]or good cause shown." [11] *See Coon v. Grenier*, 867 F.2d 73, 75 n.5 (1st Cir. 1989). The United States Court of Appeals for the First Circuit has articulated seven considerations in making this case-specific determination:

> (1) [W]hether the default was willful; (2) whether setting it aside would prejudice the adversary[;] (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; and (7) the timing of the motion.

*McKinnon v. Kwong Wah Rest.*, 83 F.3d 498, 503 (1st Cir.1996) (the "*McKinnon* factors"); *see In re Pena*, 397 B.R. 566, 574 (B.A.P. 1st Cir. 2008), *see also Edes v. Fredson*, 344 F. Supp. 2d 209, 212 (D. Me. 2004) (citing *KPS & Assocs. v. Designs by FMC, Inc.*, 318 F.3d 1, 12-13 (1st Cir. 2003)) ("The First Circuit has been careful to emphasize that removal of default is discretionary and that none of the factors is determinative.").

These factors must be examined "in a practical, commonsense manner, without the rigid adherence to, or undue reliance upon, a mechanical formula." *In re Pena*, 397 B.R. at 575; *see McKinnon*, 83 F.3d at 503 ("No precise formula is suggested, for each case necessarily turns on its own unique facts."). Significantly, the standards for setting aside an entry of default are "lower and more easily overcome" than those applied to determine if a default judgment should be vacated. *In re Pena*, 397 B.R. at 574 n.10 (citing *Coon*, 867 F.2d at 76); *see also Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981) (describing the Rule 55(c) standard as "less rigorous" than the "excusable neglect" standard used to set aside default judgments). These factors must

---

[11] The Rule also authorizes bankruptcy courts to set aside a judgment by default under Federal Rule of Civin Procedure 60(b), incorporated into bankruptcy procedure by Bankruptcy Rule 9024.

also be considered "mindful of the general policy favoring decisions based on the merits." *In re Jones*, 279 B.R. 377, 379 (Bankr. M.D. Ga. 2001) (citing *Am. Express Travel Related Servs. v. Jawish*, 260 B.R. 564, 567 (Bankr. M.D. Ga. 2000)). Courts generally disfavor defaults, "particularly when the case presents issues of fact. It follows then, that doubts are to be resolved in favor of a trial on the merits." *Canfield v. VSH Rest. Corp.*, 162 F.R.D. 431, 433 (N.D.N.Y. 1995) (citations omitted). Whether or not to vacate entry of default rests within the Court's sound discretion. *In re Pena*, 397 B.R. at 574.

    B.    <u>Fifth Amendment Privilege Against Self-Incrimination</u>

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." This privilege extends to disclosures an individual "reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." *Kastigar v. United States*, 406 U.S. 441, 444-45 (1972). It "protects federal witnesses against incrimination under state as well as federal law." *United States v. Johnson*, 488 F.2d 1206, 1209 (1st Cir. 1973) (citations omitted). But the privilege only applies in "'instances where the witness has reasonable cause to apprehend danger' of criminal liability." *United States v. Argomaniz*, 925 F.2d 1349, 1353 (11th Cir. 1991) (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)). "This provision of the Amendment must be accorded liberal construction in favor of the right it was intended to secure." *Hoffman*, 341 U.S. at 486 (citations omitted).

An individual may invoke the Fifth Amendment privilege against self-incrimination in any proceeding "whether civil or criminal, formal or informal, including a bankruptcy proceeding." *In re Blan*, 239 B.R. 385, 392 (Bankr. W.D. Ark. 1999) (citations omitted). It is, however, "not self-executing." *In re Gi Yeong Nam*, 245 B.R. 216, 227 (Bankr. E.D. Pa. 2000) (citing *Roberts v. United States*, 445 U.S. 552, 559 (1980)). The privilege may only be relied

upon if it is invoked in a proper and timely manner. *Roberts*, 445 U.S. at 559-60; *see also* 3-344 *Collier on Bankruptcy* ¶ 344.03 (15th ed. 2015) ("[I]t may not properly be invoked, for example, for the first time at a contempt hearing arising out of the refusal to answer."). If the privilege is not timely asserted, it may be deemed waived. *See In re Gi Yeong Nam*, 245 B.R. at 226-27 (citing *Rogers v. United States*, 340 U.S. 367, 373 (1951)).

To properly invoke the privilege, a party must produce "for the Court's consideration, a meaningful, articulation of the reasons why [responding] would tend to incriminate him." *In re Bartlett*, 162 B.R. 73, 79 (D.N.H. 1993) (citations omitted). The claimant need not "establish the threat of incrimination in detail, of course, since such detailed disclosure may negate the very privilege he seeks to assert." *In re Blan*, 239 B.R. at 392 (citing *In re Connelly*, 59 B.R. 421, 433 (Bankr. N.D. Ill. 1986)). However, the party *must at a minimum* show that "the claimant is confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti v. United States*, 390 U.S. 39, 59 (1968); *see In re Connelly*, 59 B.R. at 433. There need not be an active criminal investigation or proceeding in order to assert the privilege. *See, e.g.*, *In re Gi Yeong* Nam, 245 B.R. at 225-26 (adequate facts were alleged and certain federal and state statutes identified to find it "conceivable that Defendants could be linked with the federal or state crime of aiding and abetting flight to avoid prosecution"); *In re Brown*, No. 12-50853-can7, 2014 WL 309403, at *2 (Bankr. W.D. Mo. Jan. 28, 2014) (determining the debtor's response to a particular question may result in his admitting to fraud).

Notwithstanding, where a claimant alleges that there is an on-going criminal investigation or prosecution, as the Defendants have asserted here, the claimant must provide adequate information regarding such investigation or prosecution to enable the court to determine that there is a "substantial and real" fear of prosecution. *See In re Connelly*, 59 B.R. at 433. For

example, the debtor in *Friedman* alleged that he was under criminal investigation without providing any evidence of such an investigation or even minimal facts on which the court could infer the possibility of prosecution, leaving the court to conclude that the debtor was in no real fear of prosecution. No. 12-BK-40168, 2015 WL 9487643, at *4-5 (Bankr. N.D. Ill. Dec. 29, 2015).

Nor will a blanket assertion of the privilege satisfy the claimant's burden. "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination." *Hoffman*, 341 U.S. at 486; *see In re Friedman*, 2015 WL 9487643, at *4 ("An individual does not have a free hand to refuse to answer any and all questions by virtue of the Fifth Amendment's self-incrimination clause."); *In re Connelly*, 59 B.R. at 433 ("A total or blanket assertion of privilege simply will not suffice to establish the 'reasonable cause to apprehend danger from a direct answer.'"). The claimant can "invoke the privilege only to genuinely threatening questions and therefore, is required to take the oath and listen to each question . . . ." *In re Hulon*, 92 B.R. 670, 675 (Bankr. N.D. Tex. 1988); *Hoffman*, 341 U.S. at 486 (confining the privilege "to instances where the witness has reasonable cause to apprehend danger from a direct answer").

The Court is the arbiter of whether the privilege has been validly asserted. *Hoffman*, 341 U.S. at 486 (citing *Rogers v. United States*, 340 U.S. 367 (1951)) ("It is for the court to say whether his silence is justified."). "In ruling on the validity of an assertion of the privilege, the [C]ourt 'must be governed as much by [its] personal perception of the peculiarities of the case as by the facts actually in evidence.'" *In re Gi Yeong Nam*, 245 B.R. at 224-25 (quoting *Hoffman*, 341 U.S. at 487). "Invocation of the privilege must be upheld unless it is 'perfectly clear, from a careful consideration of all the circumstances of the case, that the witness is mistaken, and that

the answer(s) cannot possibly have such tendency' to incriminate." *Id.* at 225 (quoting *Hoffman*, 341 U.S. at 488).

Even if the privilege is properly invoked, it "does not compel the trier of fact in a civil proceeding to accept the assertion of the Fifth Amendment as proof of innocence." *In re Dilley*, 339 B.R. 1, 7 (B.A.P. 1st Cir. 2006). Quite to the contrary, "a bankruptcy court may draw a negative inference from the invocation of the Fifth Amendment privilege." *In re Marrama*, 331 B.R. 10, 16 (D. Mass. 2005) (citations omitted); *see also Baxter v. Palmigiano*, 425 U.S. 308, 333-34 (1976). It falls squarely within the court's discretion whether it will draw such an inference. *In re Carp*, 340 F.3d 15, 23 (1st Cir. 2003) (drawing a negative inference upon the invocation of the Fifth Amendment in civil proceedings is a "permissible, but not an ineluctable, concomitant of a party's invocation of the Fifth Amendment"); *see In re Jacobs*, 394 B.R. 646, 663 (Bankr. E.D.N.Y. 2008) ("It is similarly well established that the testimonial assertion of the Fifth Amendment is not a substitute for relevant and persuasive evidence.").

### V. Motion to Vacate Default

#### A. Preliminary Considerations

I will first address why I am treating the Motion to Vacate Default as filed by both Defendants. Federal Rule of Civil Procedure 11(a) provides that

> Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented. . . . The court must strike an unsigned paper unless the omission is promptly corrected after being called to the attorney's or party's attention.

*See, e.g.*, *Jenkins v. Network Sols., LLC*, No. CIV.A. 09-11728-JLT, 2011 WL 796746, at *2 (D. Mass. Feb. 28, 2011) (dismissing the amended complaint as it applied to one of the plaintiffs for her failure to sign the document and to correct this error once the defendant called it to her attention). While Ms. Davis did not file her own motion to set aside the entry of default, she did

sign all of the motions subsequently filed by the Defendants in this proceeding seeking extensions of time to respond to the Trustee's opposition to vacating the default entry, reciting to the Fifth Amendment privilege as the legal grounds for these motions and their failure to respond to the Complaint. She also signed the Notice of Appeal and Statement of Election. In light of their *pro se* status, I interpret such actions as a good faith attempt by Ms. Davis to correct the defect. And because of the commonality of the issues I see minimal prejudice to the Trustee in doing so. At any rate, any prejudice that may result is far outweighed by the strong policy favoring adjudicating this adversary proceeding on the merits. *See In re Coxeter*, No. 05-19146, 2009 WL 4893170, at *4 (Bankr. N.D.N.Y. Dec. 10, 2009) ("There is a preference in American jurisprudence that matters should be resolved on their merits, and not by procedural fiat.").

Considering these subsequent filings by the Defendants, I now believe that it would serve judicial economy and assist to expedite the proceeding, should it advance on the merits, to address the Motion to Vacate Default as filed by both Defendants. They are admonished that to the extent they wish any future filings to be considered as filed by both Defendants, they must continue to file them bearing both their signatures.

    B.    <u>Vacating the Default</u>

Applying the *McKinnon* factors, I conclude that under these circumstances before me, the Defendants have shown cause to vacate the entry of default against them. The reasons proffered by the Defendants and their Extension Motions (as well as their pursuit of an appeal) demonstrate their ignorance of the law and their misguided, but good faith, belief that the privilege against self-incrimination was self-executing and excused them from filing a formal Answer. I note they have acted promptly in this proceeding by filing the Motion to Vacate Default within one week after the entry of the default and timely filing each motion for extension

before the response deadline expired. Therefore, I do not find a deliberate intention to ignore the judicial process or willfully default. "[W]ilfulness [sic] . . . requires 'something more than mere negligence,' such as 'egregious or deliberate conduct,' although 'the degree of negligence in precipitating a default is a relevant factor to be considered.'" *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005) (quoting *Am. All. Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 60-61 (2d Cir.1996)).

Consistent with their belief that they had the right under the Fifth Amendment to "remain silent" to avoid self-incrimination, they simply did so when served with the summons and Complaint. The Defendants also explain that they have unsuccessfully attempted to obtain legal representation, presumably within the constraints of their financial means.[12] In the absence of such representation, they feel that they "are forced to rely upon their own understanding of the law as educated laypeople." Third Motion to Extend, at ¶ 2. The mere fact, as the Trustee notes, that Ms. Griffin in another adversary proceeding predicated upon a wholly different set of facts failed to respond to that complaint, was defaulted and a default judgment entered against her, does not diminish the Defendants' explanation for their failure to timely respond in this adversary proceeding involving a sizeable sum (in excess of $600,000) in controversy.

As to the Trustee's assertion of prejudice because of the potential for the dissipation of the assets he seeks to recover from the Defendants, I am not only unpersuaded but also somewhat perplexed. At no time during this proceeding, now pending for over 10 months, has the Trustee sought an order of this Court to restrain the Defendants from dissipating, transferring, or squandering the assets of the Debtor he alleges the Defendants fraudulently and in breach of their fiduciary duties transferred to themselves. If this were truly a concern then the time to have

---

[12] In their Extension Motions, the Defendants explain that they do not have the financial resources to retain an attorney in this proceeding. They claim to have made numerous efforts to obtain legal representation on a *pro bono* basis to no avail.

acted to prevent such occurrence has long passed. Once again, I find that any prejudice resulting from a further delay by affording the Defendants one last chance to file an Answer to the Complaint is outweighed by the significance of the privilege against self-incrimination and the policy favoring adjudication of the Trustee's claims on the merits.

The Trustee also asserts as grounds to deny the Motion to Vacate the obstacles he has encountered in the underlying bankruptcy case to ascertain the financial affairs of the Debtor because of the Defendants' alleged refusal to cooperate with him in his capacity as the Chapter 7 Trustee. To a large extent such lack of cooperation is quite plausibly tied to the Defendants' fears of criminal reprisal and the invocation of the privilege against self-incrimination. No doubt such lack of cooperation may have made his job difficult, but it has not prevented him from obtaining adequate information from other sources to commence this proceeding in an effort to recover claims on behalf of the Debtor's estate.[13]

Finally, the Trustee's contention that the Defendants have failed to present a meritorious defense[14] completely ignores the fact that the price of setting forth such a defense may be the wholesale loss of their privilege to be free from self-incrimination. As the Defendants' pointed out in their Extension Motions,

> Defendants have not stated that they do not have a meritorious defense, or that they lack any defense at all. They are saying nothing at this time, in order to avoid a misstep that could be interpreted in a way that would negatively affect the outcome of both this case and the previously mentioned criminal matter.

---

[13] Further undermining this argument, if the privilege is properly invoked "a court may, in its discretion, decide to stay civil proceedings, postpone civil discovery, or impose protective orders and conditions in the interests of justice, . . . at the request of [either party]."). *In re Piperi*, 137 B.R. 644, 646 (Bankr. S.D. Tex. 1991) (citing *SEC v. Dresser Induss., Inc.*, 628 F.2d 1368, 1372 (D.C. Cir. 1980)).

[14] "A meritorious defense is one that is 'presented and presented in a timely enough fashion to permit the opposing party to question the legal sufficiency of the defense.'" *In re Muhammad*, No. 09-10136-JNF, 2011 WL 1587125, at *4 (Bankr. D. Mass. Apr. 22, 2011) (quoting Olson v. Stone (*In re Stone*), 588 F.2d 1316, 1319 (10th Cir.1978)).

Second Motion to Extend, at ¶ 5. To deprive Defendants of one last opportunity to Answer the Complaint and invoke their right against self-incrimination, if properly asserted and applied, would be unduly prejudicial to them. In short, I find that their reliance on the Fifth Amendment privilege, while inadequately invoked, was in good faith and their Motion to Vacate Default warrants granting.

VI.     **Deadline To File Answer And Consequences Of Failing To Do So**

My earlier discussion of the applicable law on the Fifth Amendment privilege leaves little doubt that the Defendants have not properly invoked it; they must adhere to the necessary requirements to assert it for the privilege to apply here. It is not self-executing and they cannot simply rely upon an indiscriminate assertion of the privilege. From the present record and their blanket, vague recitation to the privilege, I simply cannot determine the validity of its application to any of the allegations in the Complaint. They must file an Answer in which they respond to each and every one of the numbered allegations in the Complaint, and to the extent applicable, recite to the privilege for each such allegation to which they believe it applies. *See In re Gi Yeong Nam*, 245 B.R. at 227. And they must provide some nexus between responding to each such allegation and the real, not imaginary, criminal reprisal they fear may result by answering such allegation. *In re Connelly*, 59 B.R. at 432 (finding that the claimant "must come forward with some minimal credible reasons why each of the many disclosures required of him . . . pose some real and not imaginary threat of incrimination" before the court can sustain the assertion of the privilege). I also bring to the Defendants' attention that clearly there are some basic recitations in the Complaint to which a response would in no way implicate self-incrimination, and to these allegations they must respond appropriately with an admission or denial (as applicable). Just by way of example and not limitation, responding to basic foundational

allegations, such as their names, residence, the court's jurisdiction, the nature of the proceeding and other fairly ascertainable facts would not compel incriminating testimony.

Consistent with the requirements discussed here, Defendants must also do more than refer to some unspecified "criminal proceeding" they contend is pending before the "United States District Court." If they invoke the privilege in their Answer to certain of the allegations they are required to identify with specificity the criminal case they assert is pending, i.e., the case caption, docket number, specific court in which it is pending, the date commenced, the governmental agency prosecuting the case, and generally the current status of the case. It is unclear to me if there is in fact a pending case or instead perhaps an on-going criminal investigation; there are inconsistencies in the Defendants' reference to the type of criminal proceeding in their various filings. To the extent the asserted criminal proceeding has not been commenced but they maintain there is an active criminal investigation, they must provide sufficient details to demonstrate that such investigation is in fact on-going; by what governmental agency; the jurisdiction in which it is occurring; the manner by which they became aware of such investigation; and its current status as far as they, or their lawyer representing them in the matter, know.

The Defendants shall have 30 days from the date of this Decision and Order by which to file their formal Answer to the Complaint complying with the discussion above. No extensions of this deadline will be granted. Should they fail to timely file their Answer, the Clerk of Court will once again enter a default against them and, in such event, the Trustee's previously filed Motion for Default Judgment will be ripe for consideration.[15]

---

[15] The Trustee concedes that under the principles enunciated in *Stern*, 131 S. Ct. 2594, given the nature of his state-law claims raised in the Complaint, this Court lacks the constitutional authority to enter a default judgment against the Defendants should his Motion for Default Judgment become ripe for consideration. He appropriately cites *Granfinanciera, S.A. v. Norberg*, 492 U.S. 33, 54-56, 64-65 (1989) for the proposition that a fraudulent conveyance

## VII. Conclusion

In their filings, the Defendants have repeatedly asked for a stay of this adversary proceeding until the conclusion of the alleged "criminal proceeding." As with their blanket, unsupported assertion of the Fifth Amendment privilege, the Defendants have failed to justify the granting of this "extraordinary remedy." *See, e.g.*, *Phillips v. First Nat'l Ins. Co. of Am.*, No. ADV 10-03075, 2011 WL 2447954, at *2 (S.D. Tex. June 15, 2011) (citing *Weil v. Markowitz*, 829 F.2d 166, 174 (D.C. Cir. 1987)); *Int'l Fid. Ins. Co. v. Podlucky*, No. CIV.A. 07-0235, 2007 WL 2752139, at *2-4 (W.D. Pa. Sept. 18, 2007) (denying the request for stay because the defendants failed to "sustain their burden to obtain this extraordinary remedy"). Any such request must be made by separate motion, accompanied by a memorandum of law which includes sufficient information regarding the nature of this alleged proceeding and its status to enable me to determine if a stay would be justified under the standards I must apply. And they must still timely file their Answer to the Complaint to comply with my ruling herein.

Lastly, I admonish the Defendants that the lack of legal counsel is insufficient grounds not to file an Answer to the Complaint in the time frame I have just established, and to properly invoke the privilege against self-incrimination to the extent they believe it is available for any particular allegation. *See In re Jones*, 279 B.R. at 380 ("The lack of legal assistance which creates misunderstandings as to legal requirements cannot be viewed by the Court as a plausible excuse for failing to respond to [a] complaint.").

---

action is akin to a common law contract suit, and thus, he acknowledges that only Article III courts are constitutionally empowered to enter an order finally adjudicating such claims. *See* Supplemental Memo, at ¶ 43. Accordingly, the Trustee submits that if I subsequently deem entry of default judgment warranted, I should submit a report and recommendation to the United States District Court for the District of Rhode Island. *See Wellness Int'l Network*, 135 S. Ct. 1932. I fully concur. *See, e.g.*, *In re Ueberroth*, No. 1:11-CV-1331, 2012 WL 8021719, at *1 (W.D. Mich. Jan. 3, 2012), *In re Tevilo Indus., Inc.*, No. 09-07311, 2011 WL 4793343 (Bankr. W.D. Mich. Aug. 30, 2011), *In re El-Atari*, No. 09-14950-BFK, 2012 WL 260748 (Bankr. E.D. Va. Jan. 27, 2012).

The Motion to Vacate Default is GRANTED as to both Defendants. As set forth above, the Trustee's Motion for Default Judgment is not ripe for consideration at this time and a ruling on the motion will be deferred.

Date:   January 25, 2016                                    By the Court,

_Diane Finkle_
Diane Finkle
U.S. Bankruptcy Judge